## Hess *v.* Kemmerer, Appellant.

*Negligence—Automobiles—Running down pedestrian at crossing —Contributory negligence.*

In an action against an owner of an automobile to recover damages for injuries at a street crossing, the plaintiff may recover damages caused by the defendant's negligence notwithstanding the plaintiff's own negligence exposing him to the risk of injury, if such injury was more immediately caused by the defendant's omission after becoming aware of the plaintiff's danger to use ordinary care for the purpose of avoiding injury to him.

Argued Oct. 20, 1916. Appeal, No. 195, Oct. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., June T., 1915, No. 4795, on verdict for plaintiff in case of Theodore Hess v. Earle Kemmerer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CARR, J.

At the trial the jury returned a verdict for $1,500 in favor of the plaintiff. On a rule for judgment n. o. v. and for a new trial, CARR, J., filed the following opinion:

The plaintiff was injured on May 6, 1915, at three o'clock in the afternoon while crossing Broad street at Melon, which is the first street south of Ridge avenue. The plaintiff and three companions started to cross Broad street from the south side of Melon street, from the west to the east. They waited on the west side of Broad street until that portion of the street was clear of

Opinion of Court below. [65 Pa. Superior Ct.

traffic and reached the center line of Broad street where several automobiles were parked. Kohler and McComber were walking in front. Kohler testified: "Lederman and Mr. Hess was walking in back of us. After the car had went down there was an open place there, we walked to the center of Broad street. We stood there until they all went up and this car was crossing Wallace street at this time. I walked across this way with my hand up this way (illustrating) looking right at him. He came for me, and I thought he was going to hit me. Instead of that he shot out back, and the first thing I saw Mr. Hess under the car about fifty feet up Broad street. Mr. Lederman was with Mr. Hess. Right to the center of Broad street. First we stopped on the west side of the curbstone until they went down, until the cars had passed, and then we went to the center of Broad street. We left them go up until they were all up with the exception of this one, he was way down at the corner, down at Wallace street."

Lederman was walking with Hess and testified: "A. Mr. Kohler and Mr. Kilvington and Mr. Hess and myself and Mr. McComber went down to Broad street and went to cross Broad street. We stood on the west side of Broad street and left quite a few cars pass us, and we crossed over to the middle of Broad street. We stood there and left quite a few cars pass. It was about the time of the baseball and there were quite a few cars ran up at that time. We stood in the center of Broad street and we let those cars pass excepting this one car. Q.— What happened? You stopped in the middle of Broad street and you waited? A.—We waited and let quite a few cars pass up. Q.—Then you walked on? You went with whom? A.—I was with Mr. Hess. Q.—You were in front, were you, or behind? A.—I was behind. I was with Mr. Hess behind Mr. Kohler and Mr. McCumber. Q.—Kohler and McCumber started over first? A.—Yes, sir. Q.—To the east side, is that it? A.—Yes, sir. Q.— How far behind them came you and Hess? A.—Three or

247, (1916).]          Opinion of Court below.

four feet. Q.—State what happened? A.—They started to cross the street and we saw this automobile coming, and I saw Mr. Kohler put his hand up, and we kept on walking over, and the machine came along, Mr. Kohler ducked around him and I jumped back, and the machine came to about ten or twelve inches of hitting me, and Mr. Hess went the other way. Q.—How do you mean he went the other way? A.—I jumped back this way and Mr. Hess ran forward, and Mr. Hess went kind of catacornered this way. Q.—Do you mean southeast or northeast? A.—It would be northeast. After he did this gentleman running the car, Mr. Kemmerer, his car followed Mr. Hess—his car didn't go straight. After passing Mr. Kohler and after I jumped he turned his car and followed Mr. Hess up. After he hit Mr. Hess Mr. Hess turned head over heels underneath the car I judge eight times, and he dragged him for about forty feet— forty or fifty feet. When the car was stopped the car was, I should say, fifteen or sixteen inches away from the curb by the watering trough."

The plaintiff received very severe injuries. Two legs were broken, the right one being so badly injured as to require amputation below the knee; right arm and wrist broken, shoulder blade fractured, three ribs on the left side broken, and general contusions, and has suffered permanent injury. At the time of the trial he was 67 years of age. Before the accident he was in good health, sober and industrious habits, and had never suffered of any ailment or disease prior to the accident and was not able to work from the time of the accident until the trial. The verdict was in favor of the plaintiff for $1;500.

The motion now pressed by the defendant is for judgment n. o. v., and is based upon the ground of contributory negligence by the plaintiff, and it is argued that the plaintiff, without looking or in any way observing the approach of automobiles from the south, stepped out and was struck, the plaintiff testified: "Q.—Did you see this automobile that struck you before you were struck? A.—

I don't know. Q.—You didn't look for it, did you? A.—
No, I didn't look, the witness will tell you this better. I
can't tell you any more. Q.—I am talking before you
were struck. You don't remember having seen that auto-
mobile at all before it struck you? A.—No. Q.—You
didn't look for it? A.—No. Q.—At the point in Broad
street when you got out in the middle of Broad street,
you can see south down to Spring Garden street, can you
not? A.—You could, yes." The defendant contends
that the plaintiff when in a position of safety back of the
automobiles parked in the center of Broad street, and
where he could have a clear view of the street to the south
to ascertain whether automobiles were approaching or
not, failed in the exercise of his clear duty to look and
take any other steps to ascertain whether cars were ap-
proaching and thereby protect himself. The testimony
produced on behalf of the defendant was that his auto-
mobile was moving slowly on Broad street and could not
have moved otherwise by reason of the crowded traffic
at that hour and date, and that instead, as the plaintiff
said, there was a clear space between the point of the
accident and Wallace street, that space was, according
to the statement of the defendant and his witnesses,
crowded with automobiles and that the plaintiff sud-
denly appeared from among the automobiles parked in
the central part of Broad street in front of his automo-
bile and he could not avoid the accident.

At the request of the defendant the jury were instruct-
ed that it was the duty of the plaintiff to ascertain if
vehicles were coming and if by reason of his failure to
look he failed to see the machine of the defendant and
was struck by it, then he could not recover.

That ordinarily that is the principle which controls the
question of contributory negligence of persons who are
crossing the crowded city streets is not questioned:
Kauffman v. Nelson, 225 Pa. 174. That principle, how-
ever, does not control the question before the court upon
this motion, for the plaintiff may recover damages for an

injury caused by the defendant's negligence notwithstanding the plaintiff's own negligence exposing him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him : 1 Sherman & Redfield, Sect. 99, p. 248, 6th Ed., 1913; Vol. XXXIII, Cyc. p. 854. In Walsh v. Pittsburgh Railways Company, 221 Pa. 463, a recovery was sustained in the case of a trespasser who was standing near a cable on defendant's premises. An employee of the defendant passed along very close to her, entered the power house, and put the machinery in motion. The cable which was frayed caught the plaintiff's dress and injured her. There it was said : "If the man who started the motor, knew at that time that the plaintiff was standing between the rails close to the frayed cable, which would touch her dress when in motion, and from his knowledge of the circumstances, was conscious that she would be exposed to danger if the machinery was put in motion, a duty of care arose, as it would in the case of an engineer who sees a child upon the track in front of his engine. He had the fullest opportunity to see the plaintiff, to observe where she stood in relation to the cable, and to realize the consequences that would probably result from this act. Whether he actually saw her and was conscious that his act exposed her to danger were questions for the jury." In Steele v. Lake Shore, Etc., Railroad Company, 238 Pa. 295 (1913), a workman employed at an industrial plant was about to make use of a permissive crossing over defendant's railroad tracks. Finding the crossing obstructed by a freight train, he went further down the tracks to cross at a point where the freight train was divided. While so doing the train was suddenly moved without warning and injured him. While plaintiff was in a helpless position after being struck, there was evidence that one of the crew had notice of his position. The train came back a second time and again injured

him. · There it was held: "The plaintiff was not required to give notice directly to the engineer. The crew was in control of the train, and it appeared from the evidence that prior to the second movement the brakeman had notice of the plaintiff's position and that he at once gave the proper signal to those in charge of the locomotive. It certainly goes without saying that it was the duty of the engineer to observe the signal and act promptly on the information thus communicated to him. A jury should have little difficulty in finding that the failure to perform this duty was negligence for which the defendant would be liable. We think it apparent that the second injury could have been avoided had the engineer seen and heeded the signal given by the brakeman. It must be presumed that the crew in charge of the train knew of the location of all crossings, etc." In Lorah v. Rinehart, 243 Pa. 231, the plaintiff sought to recover damages for the death of her husband who was killed in collision with an automobile on Liberty street in the City of Pittsburgh. The accident occurred at a place where the traffic upon the street was congested. Early in the afternoon of October 26th, the plaintiff's husband was on⁻ the southerly side of Liberty street at a point opposite the line of Ninth street, which leads northwardly from but does not cross Liberty street. He left the curb and attempted to cross Letter street which is some fifty-eight feet in width. A loaded wagon was standing near the curb. After passing it and getting fairly into the street the plaintiff's husband was struck by the automobile of the defendant with such force as to lift him from his feet and throw him upon the street pavement fracturing his skull. The testimony on the part of the plaintiff tended to show that the automobile was moving at a rate of from twelve to fifteen miles an hour; that plaintiff's husband was struck by the front of the car near its center, and that it moved forty or fifty feet after the collision, but it was stopped. On the other hand, the testimony upon the part of the defendant tended to show that the auto-

mobile was running slowly, and that plaintiff's husband
stepped out from behind a wagon directly into the side
of the mudguard on the car and that the front of the car
did not strike him.   The judgment for plaintiff was sus-
tained.   The court discussed the question of what would
be negligence under different circumstances, and held
that a speed of twelve miles an hour in a congested dis-
trict might be negligence, but it was a question for the
jury, and the court held that the trial court had not
erred in permitting the jury to take into consideration, in
judging the speed of the car, the distance which the ma-
chine traveled before it came to a stop after plaintiff's
husband was struck, and it was held: "That was an ele-
ment very properly to be considered.   The very purpose
in running slowly is to enable the driver to bring the
automobile quickly to a halt in case of an emergency.
The test of control is the ability to stop quickly and eas-
ily.   When this result is not accomplished, the inference
is obvious that the car was running too fast, or that
proper effort to control it was not made."   In Rose v.
Southern Cambria Railway Company, 58 Pa. Superior
Ct. 143, it was held: "In an action against a street rail-
way company to recover damages for injuries to a team
of horses and wagon sustained in a head-on collision, the
question of the defendant's negligence and plaintiff's con-
tributory negligence is for the jury, where the evidence
tends to show that the team, consisting of four horses
attached to a heavily loaded wagon of stone was being
driven from a public street of an eight per cent. grade,
with which the driver was familiar; that owing to the
bad repair of a portion of the cartway plaintiff strad-
dled with his team the tracks in driving up the hill;
that in attempting to get his wagon from the tracks the
wheel caught and slid along the rail; that the car which
struck the team approached around a curve at a point
where the motorman could not see the team until within
fifty or sixty feet of the place of the collision, and the evi-
dence as to signals was contradictory,"   In Dyer v.

Philadelphia Rapid Transit Company, 58 Pa. Superior
Ct. 634, the plaintiff's version of the accident in that case
was that he was driving a milk wagon eastward on the
car track on Norris street on which there was a single
track trolley road. He was approaching Trenton avenue,
a cross street, upon which there were five railroad tracks
crossing Norris street at right angles. Plaintiff saw de-
fendant's car approaching about thirty yards away, just
crossing Trenton avenue. The conductor was standing
in the center of Trenton avenue. Having run ahead of
the car to see whether the railroad tracks were clear
when the car came up, he boarded it and at once started
at full speed. The plaintiff commenced to leave the
trolley track about twenty yards from Trenton avenue,
but some escaping steam caused his horse to shy, and
brought him back to the car tracks, and before he cleared
the tracks the car came along and struck the hind wheel
of the wagon. There it was held: "This certainly does
not present a case so clear that it can be ruled as a matter
of law. Whether he (the driver) exercised proper care
under the circumstances, or simply remained upon the
car track after he saw the approaching car, was for the
jury, and if they found he was not negligent then it
remained for them to decide whether the motorman
for the defendant saw, or should have seen, the plain-
tiff attempting to get out of the way of the car, and ex-
ercised such watchful care as was required or negligently
operated his car and thus caused the injury to the plain-
tiff."

The motions are dismissed.

*Error assigned* was in refusing defendant's motion for
judgment n. o. v.

*William T. Connor*, with him *John R. K. Scott*, for ap-
pellant.—Plaintiff was guilty of contributory negli-
gence: Buzby v. Philadelphia Traction Co., 126 Pa. 559;
Harris v. Commercial Ice Co., 153 Pa. 278; Nugent v.

247, (1916).]    Arguments—Opinion of the Court.

Philadelphia Traction Co., 181 Pa. 160; Sullivan v. Consolidated Traction Co., 198 Pa. 187; Kauffman v. Nelson, 225 Pa. 174.

*Edward A. Kelly,* for appellee.—The case was for the jury: Walsh v. Pittsburgh Rys. Co., 221 Pa. 463; Steele v. Lake Shore, Etc., R. R. Co., 238 Pa. 295; Biddle v. Hestonville, Etc., Ry. Co., 112 Pa. 551; Barre v. Reading Ry. Co., 155 Pa. 170; Enright v. Pittsburgh Junction R. R. Co., 198 Pa. 166; Haynes v. Penfield, 231 Pa. 329; Rose v. Southern Cambria Ry. Co., 58 Pa. Superior Ct. 142; Dyer v. Philadelphia Rapid Transit Co., 58 Pa. Superior Ct. 634; Craven v. Pittsburgh Rys. Co., 243 Pa. 619; Hoffman v. Philadelphia Rapid Transit Co., 59 Pa. Superior Ct. 532.

OPINION BY ORLADY, P. J., December 18, 1916:

The painstaking analysis of the testimony by the trial judge, and his application of decided cases to the undisputed facts in overruling the defendant's motions for a new trial and for judgment non obstante veredicto, make it unnecessary to further review this case, and for the reasons given in his opinion, the judgment is affirmed.